OPINION
Appellant Douglas Allmon appeals his conviction, in the Stark County Court of Common Pleas, for one count of gross sexual imposition. The following facts give rise to this appeal. On September 3, 1997, Kimberly Mitchell, the mother of the seven-year-old victim in this matter, took her daughter to appellant's apartment because appellant agreed to take the child to school that day. However, instead of taking the child to school, appellant remained with her at the apartment. Appellant had the child sit on his lap while they watched television and played cards. While seated on his lap, appellant moved his penis beneath her. Appellant also touched the child's vagina, with his hand, under her clothes, and made the child touch his exposed penis. Kimberly Mitchell returned to appellant's apartment after receiving a phone call from the child's school that she was absent. Upon arriving at the apartment, Ms. Mitchell noticed that the child appeared upset and scared. Ms. Mitchell asked the child to step outside appellant's apartment and talk to her. The child became agitated, started talking fast and eventually began to cry. The child told Ms. Mitchell what appellant did to her. Ms. Mitchell placed the child in her vehicle and proceeded to confront appellant. Appellant did not deny the allegations and merely apologized. Ms. Mitchell did not immediately report the incident to the authorities for fear that the Stark County Department of Human Services would remove the child from her home. However, shortly after this incident, the child began to exhibit unusual, negative and destructive behavior. The child began to describe herself as fat, ugly and stupid. The child would dig her fingernails into her arm and bang her head against a wall. The child also had difficulty sleeping at night and would lie awake and scream. The child would also not obey Ms. Mitchell. During one incident, the child, while staying at a friend's house, intentionally abused her friend's new puppy. The child also began talking about sexy clothes, sexy boys and sex in general. Ms. Mitchell informed appellant how her daughter had been behaving since the incident and appellant offered to pay for the child to see a child psychologist for therapy. Finally, by late October, Ms. Mitchell became so concerned about the child's behavior that she took her to the Aultman Family Practice for medical testing related to sexual abuse. Ms. Mitchell wanted to determine if there was evidence of the sexual abuse such as penetration. The examination occurred on October 30, 1997, and the doctor found no physical evidence of sexual abuse. However, the doctor advised Ms. Mitchell to report the matter to the authorities, which she did not do until after Christmas. On January 2, 1998, Ms. Mitchell took the child to the Jackson Township Police Department. Ms. Mitchell and the child spoke to Officer Daniel Kunkel. Ms. Mitchell told Officer Kunkel about the incident. Officer Kunkel spoke to the child, separately, after which he referred the matter to the detective bureau. Thereafter, in February 1998, the child began seeing Dr. David Coleman, a child psychologist. Over the course of six sessions, Dr. Coleman noted that the child's description of her encounters with appellant remained consistent. Dr. Coleman also confirmed that the child suffered from low self-esteem. Dr. Coleman requested and received, from the child's teacher, a completed behavior rating scale. The teacher's observations were consistent with Ms. Mitchell's description of the child's hyperactivity and other behavioral changes. In February 1999, the Stark County Grand Jury indicted appellant for one count of gross sexual imposition. Appellant entered a plea of not guilty. Immediately prior to trial, Appellee State of Ohio moved to amend the indictment concerning the time frame of the incident. The indictment and bill of particulars alleged conduct occurring from September 1 to September 30, 1997. The requested amendment expanded the period of time from June 1 to October 31, 1997. Appellant objected to the requested amendment on the basis that he was only prepared to defend appellant for the month of September 1997. The trial court granted the amendment. Appellant asked for a continuance of the trial date in order to prepare a defense based on the expanded period of time. The trial court overruled appellant's motion. At the conclusion of trial, the jury found appellant guilty as charged in the indictment. At a subsequent, separate sentencing hearing conducted on June 14, 1999, the trial court classified appellant as a "sexually oriented offender" and sentenced appellant to a determinate term of three years incarceration. Appellant timely filed a notice of appeal and sets forth the following assignments of error for our consideration:
 I. THE JUDGMENT RENDERED BY THE TRIAL COURT WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
 II. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY DENYING APPELLANT'S MOTION FOR A CONTINUANCE AFTER ALLOWING THE STATE TO AMEND THE INDICTMENT IMMEDIATELY BEFORE TRIAL.
 III. THE PROSECUTOR MADE SEVERAL STATEMENTS IN HIS CLOSING ARGUMENT WHICH WERE SO PREJUDICIAL AS TO AFFECT APPELLANT'S CONSTITUTIONALLY PROTECTED RIGHTS.
 IV. TRIAL COURT ERRED AS A MATTER OF LAW BY NOT FOLLOWING THE MANDATES OF R.C. 2950 IN CATEGORIZING APPELLANT AS A SEXUAL PREDATOR.
 I
Appellant contends, in his First Assignment of Error, that the jury's verdict finding him guilty of gross sexual imposition is against the manifest weight and sufficiency of the evidence. We disagree. On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. State v. Jenks (1991),61 Ohio St.3d 259. On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983), 20 Ohio App.3d 172, 175. See also, State v. Thompkins (1997), 78 Ohio St.3d 380. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175. It is based on this standard that we review appellant's First Assignment of Error. As to the issue of sufficiency, we find the prosecution presented ample evidence from which the jury could find each of the elements of gross sexual imposition. The relevant provision of the gross sexual imposition statute is contained in R.C. 2907.05(A)(4) and provides as follows: (A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:
* * *
 (4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person.
At trial, the victim in this case identified appellant as the person who touched her vagina and forced her to touch his penis. Based on the victim's school attendance records, the state also established that this incident occurred on September 3, 1997, at appellant's apartment in Jackson Township. The jury's verdict is supported by the sufficiency of the evidence because the evidence presented by the state supports a conviction for the crime of gross sexual imposition. Appellant also claims the jury's verdict is against the manifest weight of the evidence. In support of this argument, appellant argues that the victim is unable to remember many important matters regarding her allegations of sexual abuse. Specifically, appellant refers to the victim's testimony regarding an incident when she slept with appellant and her mother, on the floor at appellant's apartment, and appellant touched her under her clothing. At trial, the victim testified that she thought she dreamt this happened but does not remember dreaming. Tr. Vol. II at 145. Even if the victim is unsure about this specific incident, the charge against appellant is based on the incident that occurred on September 3, 1997. According to the victim's mother, the victim informed her immediately, upon arriving at appellant's apartment, what appellant did to her. The victim was upset and crying. Further, over the course of six sessions of counseling with Dr. Coleman, he testified, at trial, that the child's description of her encounters with appellant remained consistent. Id. at 263. Based on this evidence, we do not find in resolving conflicts in the evidence, the jury clearly lost its way and created a manifest miscarriage of justice. The jury's verdict is not against the manifest weight of the evidence. Appellant's First Assignment of Error is overruled.
 II
In his Second Assignment of Error, appellant maintains the trial court abused its discretion when it denied his motion for continuance after it granted the state's motion for leave to amend the indictment immediately before trial. We disagree. Appellant argues the trial court should have granted his motion for continuance because appellant's defense counsel informed the trial court that he was only prepared to defend appellant for the month of September 1997, as originally indicated in the indictment. Tr. Vol. I at 9-10. Crim.R. 7(D) governs the amendment of a criminal indictment and provides, in pertinent part: The court may at any time before, during, or after a trial amend the indictment, information, complaint, or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged. * * *
The trial court enjoys broad discretion in granting or denying a continuance. State v. Unger (1981), 67 Ohio St.2d 65, paragraph one of the syllabus. An abuse of discretion occurs only where the trial court's attitude is unreasonable, arbitrary or unconscionable, it connotes more than an error of law or judgment. Unger at paragraph one of the syllabus. In Ungar v. Sarafite (1964), 376 U.S. 575, 589, the United States Supreme Court stated that: [t]here are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied. Id. at 589.
In the case sub judice, defense counsel requested a continuance because he was only prepared to defend appellant for events that occurred in September 1997 and not the expanded time frame of the amended indictment. However, evidence presented by the state indicates that the incident that formed the basis of this charge against appellant occurred on September 3, 1997. This date is within the time frame contained in the original indictment. It is also within the time frame defense counsel indicated he was prepared to represent appellant. As such, the trial court did not abuse its discretion when it denied appellant's motion for continuance. Appellant's Second Assignment of Error is overruled.
 III
Appellant contends, in his Third Assignment of Error, that the prosecutor committed prosecutorial misconduct as the result of several statements the prosecutor made during closing argument. We disagree. The test for prosecutorial misconduct is whether the prosecutor's conduct at trial was improper and prejudicially affected the substantial rights of the defendant. State v. Lott (1991), 51 Ohio St.3d 160, 165, certiorari denied 498 U.S. 1017. A prosecutor's conduct during trial cannot be grounds for error unless the conduct deprives the defendant of a fair trial. State v. Apanovitch (1987), 33 Ohio St.3d 19, 24. In support of his claim of prosecutorial misconduct, appellant cites to two statements made by the prosecutor. The first statement appellant challenges is as follows: "The truth is she [Ms. Mitchell] was there and her daughter was extremely upset coming out of the house and the daughter told the truth." Tr. Vol. II at 368. Appellant argues that by making this statement, the prosecutor improperly expressed her opinion regarding the credibility of the witness. The record indicates defense counsel did not object to this statement by the prosecutor. Therefore, we must analyze this argument under a plain error analysis. In order to prevail under a plain error analysis, appellant bears the burden of demonstrating that the outcome of the trial clearly would have been different but for the error. Notice of plain error must be taken with utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. State v. D'Ambrosio (1993), 67 Ohio St.3d 424, 437; State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. We conclude the statement made by the prosecutor does not rise to the level of plain error because the outcome of the trial clearly would not have been different. Although a prosecutor is not permitted to comment on the credibility of a witness, the prosecutor's statement, in the case sub judice, is not an expression of her personal belief but only an analysis of the reliability of the excited utterance the victim made to her mother when she arrived at appellant's apartment. Appellant next challenges the following statement made by the prosecutor: " Their [the defense] whole theory lies with this was a complete, perfect conspiracy. Does that make sense to you? And the motivation for that conspiracy, all they are putting their hat on, is that Kimberly [victim's mother] did not notify the authorities immediately." Tr. Vol. II at 370. Defense counsel objected to this statement. Id. The trial court overruled appellant's objection but cautioned the jurors to remember that what the lawyers say is not evidence and that the jury would determine what the evidence is. Id. Appellant argues this statement is an attempt to mislead the jury and was not based on the evidence presented at trial. Upon reading the transcript, we find the prosecutor made this statement in response to defense counsel's closing argument which stressed the lack of an immediate report to the police as a reason the jury should question whether the incident even occurred. This statement did not mislead the jury and was not beyond the evidence presented at trial as the state presented evidence concerning when the victim's mother finally reported this incident to the Jackson Township Police Department. Appellant used this delay in reporting as a means of challenging the validity of the allegations against him. The prosecutor did not commit prosecutorial misconduct when she made this statement. Appellant's Third Assignment of Error is overruled.
 IV
In his final assignment of error, appellant maintains the trial court failed to follow the mandates of R.C. 2905. We disagree. Appellant argues the trial court should have conducted a separate evidentiary hearing pursuant to R.C. 2950.09 in determining that appellant should be classified a "sexually oriented offender." However, since appellant is a "sexually oriented offender", by operation of law, due to his conviction for gross sexual imposition, the trial court did not have to conduct a separate evidentiary hearing. See State v. Everhart (Feb. 23, 1999), Tuscarawas App. No. 97AP090057, unreported, at 3-4. Appellant's Fourth Assignment of Error is overruled.
For the foregoing reasons, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby affirmed.
 ______________________ Wise, J.
By: Gwin, P.J., and Farmer, J., concur.